1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   REX CHAPPELL,

11            Plaintiff,                No. 2: 09-cv-1465 GEB KJN P

12        vs.

13   T. PEREZ, et al.,

14            Defendants.            ORDER

15   _____/

16   I.  Introduction

17            Plaintiff is a state prisoner proceeding without counsel with a civil rights action

18   pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' October 18, 2010 motion

19   requesting that plaintiff be declared a vexatious litigant and for a pre-filing order.  For the

20   following reasons, defendants' motion is denied.

21   II.  Discussion

22            The All Writs Act, 28 U.S.C. § 1651, vests federal courts with the discretion to

23   enjoin certain litigants from engaging in frivolous litigation.  Clinton v. United States, 297 F.2d

24   899 (9th Cir. 1961).  Under the statute, a court may restrict litigants with abusive and lengthy

25   histories from submitting future filings of actions or papers provided that it: 1) gives the litigant

26   an opportunity to oppose the order before it is entered, i.e. notice; 2) creates an adequate record

1

1   for review; 3) makes substantive findings as to the frivolous or harassing nature of the litigant's

2   actions; and 4) drafts a sufficiently detailed order.  De Long v. Hennessey, 912 F.2d 1144, 1145-

3   48 (9th Cir. 1990).

4           Several sources also permit the court to order a plaintiff to post security.  Simulnet

5   East Associates v. Ramada Hotel Operating Company, 37 F.3d 573, 574 (9th Cir. 1994); In re

6   Merrill Lynch Relocation Management, Inc., 812 F.2d 1116, 1121 (9th. Cir. 1987).  One purpose

7   of authorizing security is to allow the court to have some control over the administration of a

8   lawsuit.  See Ilro Productions Ltd. v. Music Fair Enterprises, 94 F.R. D. 76, 78 (S.D.N.Y. 1982)

9   (citing Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir. 1965)).  In determining

10  whether to impose a bond, the court may "take all the pertinent circumstances into account

11  including the conduct of the litigants and the background and purpose of the litigation."

12  Leighton, 340 F.2d at 861.

13          Additionally, "[w]hile no federal statute authorizes security for costs, the District

14  Courts may make their own rules not inconsistent with the Federal Rules of Civil Procedure."

15  Russell v. Cunningham, 233 F.2d 806, 811 (9th Cir. 1956) (citing Fed. R. Civ. P. 83).  See also

16  Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1025 (2002).  Local

17  Rule 151(b) permits the court at any time, on its own motion or that of party, to order a party to

18  give security, bond, or undertaking in such amount as the court may at any time determine to be

19  appropriate.  Local Rule 151(b) provides: "The provisions of Title 3A, part 2, of the California

20  Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural rule

21  of this Court on the basis of which the Court may order the giving of security, bond or

22  undertaking, although the power of the court shall not be limited thereby."

23          California Code of Civil procedure, Title 3A, part 2, commences with Section

24  391.  Section 391.1 requires a party to furnish security on a showing that (1) the party is a

25  vexatious litigant and (2) there is no reasonable probability that she will prevail in the instant

26  litigation.  Section 391 defines a vexatious litigant as follows:

b) "Vexatious litigant" means a person who does any of the following:

(1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.

(2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.

(3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.

(4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

Section 391 defines "security" as "an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses including attorney's fees and not limited to taxable costs incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant."  Cal. Code Civ. P. § 391(c).

In <u>Moran v. Murtaugh, Miller, Meyer & Nelson, LLP</u>, 40 Cal. 4th 780, 55 Cal. Rptr. 3d 112 (2007), the California Supreme Court held that in vexatious litigant proceedings, courts may weigh the evidence in determining whether there is a reasonable probability that a party will prevail.

////

////

////

////

////

A.  Reasonable Probability on the Merits

The undersigned first considers whether there is no reasonable probability that plaintiff will prevail in the instant litigation.

1.  Plaintiff's Claims

This action is proceeding on the amended complaint filed June 23, 2010, as to defendants Perez, Cochrane, Medina, Murray, Neponmuceno, Swingle, Bishop, Williams and Glover.  At all relevant times, plaintiff and defendants were located at High Desert State Prison ("HDSP").

Plaintiff alleges that he required single cell status due to a seizure disorder.  Plaintiff claims that when he suffered from seizures he became violent.  Plaintiff claims that he showed all defendants documents prepared by doctors indicating his need for single cell status.  Plaintiff alleges that in 2009 all defendants decided to remove him from single cell status.

Plaintiff also alleges that defendant Bishop told him that his documents and chronos from other prisons indicating that he should have single cell status were old.  Defendant Bishop told plaintiff that defendant Murray, a psychologist at HDSP, had stated that there was no reason plaintiff could not have a cellmate at HDSP.  Plaintiff told defendant that his condition was a medical condition, not a mental health condition.

Plaintiff alleges that defendant Bishop found him guilty of obstructing a peace officer by refusing a cellmate.  Plaintiff then filed an administrative appeal regarding this disciplinary conviction.  When plaintiff told defendant Bishop about this appeal, defendant Bishop allegedly told him that his officers picked up the appeals every night and plaintiff would never see it.  Plaintiff alleges that he has not seen the grievance since he filed it.

As legal claims, plaintiff alleges that all defendants violated his Eighth Amendment right to adequate medical care by refusing him single cell status.  Plaintiff also alleges that defendant Bishop's interference with his grievance violated his right to access the courts and his right to due process and equal protection.  Plaintiff also alleges various state law

4

1   claims.

2         2.  <u>Discussion</u>

3         *Eighth Amendment*

4         Defendants argue that plaintiff's Eighth Amendment allegations consist of

5   nothing more than a difference of medical opinion which are insufficient in setting forth a viable

6   deliberate indifference claim.

7         In order to state a § 1983 claim for violation of the Eighth Amendment based on

8   inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

9   deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).  To

10   prevail, plaintiff must show both that his medical needs were objectively serious, and that

11   defendants possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 299

12   (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

13   mind for a medical claim is "deliberate indifference."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 4

14   (1992).

15         A serious medical need exists if the failure to treat a prisoner's condition could

16   result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

17   that a prisoner has a serious need for medical treatment are the following:  the existence of an

18   injury that a reasonable doctor or patient would find important and worthy of comment or

19   treatment; the presence of a medical condition that significantly affects an individual's daily

20   activities; or the existence of chronic and substantial pain.  <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900

21   F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01

22   (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u>

23   <u>grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

24         In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court  defined a very

25   strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of

26   course, negligence is insufficient.  <u>Farmer</u>, 511 U.S. at 835.  However, even civil recklessness

(failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37.  Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Citing page 81 of the amended complaint, defendants contend that plaintiff's exhibits demonstrate that defendant Dr. Murray fully reviewed plaintiff's medical file and determined that he had no medical need for a single cell.  Defendants also state that other documents attached to plaintiff's amended complaint demonstrate that the other defendants relied on defendant Dr. Murray's opinion in housing plaintiff in a double cell.  Defendants contend that plaintiff's claim that defendants should have housed him in a single cell amounts to nothing more than a difference of medical opinion.

Page 81 of the amended complaint is a page from a rules violation report addressing charges against plaintiff for obstructing a peace officer by refusing a cellmate.  (Dkt. No. 21, at 81.)  Page 81 includes the finding by the hearing officer that plaintiff was guilty of the charges.  (Id.)  In making this finding, the hearing officer wrote that the classification committee making the decision to remove plaintiff's single cell status included defendant Murray, a staff psychologist, "who would necessarily have reviewed and familiarized himself with Inmate Chappell's mental health status and care, prior to taking part in a committee decision to affirm Inmate Chappell's double cell status."  (Id.)

Plaintiff is claiming that defendant Murray, as a psychologist, was not qualified to make a decision regarding whether single cell status was medically required.  Attached to the amended complaint as exhibit are several documents indicating that plaintiff's need for single cell status had previously been treated as a medical issue.  An entry in plaintiff's medical records

by Dr. Johnson, M.D., while plaintiff was housed at California State Prison-Sacramento states that plaintiff should not be housed with other inmates due to a seizure disorder. (Id., at 40.) The date of this entry is illegible. Another entry in plaintiff's medical records from April 20, 2000, states that it would be "prudent" to have plaintiff single celled due to his seizures. (Id., at 41.) A medical chrono signed by Douglas Peterson, M.D. and Charles Johnson, M.D. recommends single cell status for plaintiff from August 15, 2000, through August 15, 2001. (Id., at 42.)

Also attached as exhibits to the amended complaint are HDSP classification committee reports allowing plaintiff single cell status. A March 8, 2007 HDSP classification committee report states that plaintiff's continued need for single cell status had been referred back to *medical* for re-evaluation. (Id., at 29.) On July 12, 2007, a HDSP classification committee elected to retain plaintiff on single cell status, in part, due to his seizure disorder. (Id., at 30.) On January 31, 2008, a HDSP classification committee referred plaintiff's case to *medical* for review of his continued need for single cell status. (Id., at 3.) On June 24, 2008, a HDSP classification committee placed plaintiff on single cell status. (Id., at 31.)

Plaintiff's claim that defendants relied on the opinion of defendant Murray, a psychologist, to revoke his single cell status, alleges more than a difference of medical opinion between medical doctors. Plaintiff is claiming that defendant Murray was not qualified to render an opinion regarding whether single cell status was medically required. As discussed above, exhibits attached to the complaint indicate that medical doctors had previously been consulted regarding plaintiff's need for single cell status. For these reasons, as for plaintiff's Eighth Amendment claim, the undersigned does not find that there is no reasonable probability that plaintiff will prevail in the instant litigation.

*Remaining Claims*

Plaintiff alleges that defendant Bishop's refusal to process his administrative appeal violated his right to access the courts and his right to due process and equal protection. Defendants argue that plaintiff cannot prevail on these claims. As for plaintiff's state law claims,

1  defendants argue that plaintiff has failed to allege compliance with the California Tort Claims

2  Act.

3          Because the undersigned does not agree that there is no reasonable probability that

4  plaintiff will prevail on his Eighth Amendment claim, there is no need to address defendants'

5  arguments regarding the remaining claims.

6          B.  Vexatious Litigant

7          Because the undersigned does not finds that there is no reasonable probability that

8  plaintiff will prevail on his Eighth Amendment claim, there is no need to address whether

9  plaintiff is a vexatious litigant.

10         Accordingly, IT IS HEREBY ORDERED that defendants' motion for an order

11  declaring plaintiff a vexatious litigant (Dkt. No. 27) is denied; within twenty days of the date of

12  this order, defendants shall file a response to plaintiff's amended complaint.

13  DATED:   April 25, 2011

14

15

16                                                  KENDALL J. NEWMAN
                                                    UNITED STATES MAGISTRATE JUDGE

17  ch1465.vex(2)

18

19

20

21

22

23

24

25

26

8